[Cite as *State v. Edmonds*, 2023-Ohio-3082.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 29625 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01227 |
| | : | |
| LYNESHIA J. EDMONDS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 1, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellant

ARVIN S. MILLER, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} The State of Ohio appeals pursuant to R.C. 2945.67(A) and App.R. 5(C) from the trial court's judgment entry acquitting defendant-appellee Lyneshia Edmonds of theft in violation of R.C. 2913.02(A)(1).

{¶ 2} The State contends the legal reasoning in *State v. Roberts*, 2d Dist. Montgomery No. 26431, 2015-Ohio-2716, upon which the trial court relied, is untenable

and should be reconsidered.

{¶ 3} We conclude that our reasoning in *Roberts* was sound, and we decline the State's invitation to overrule that decision.

## I. Background

{¶ 4} A grand jury indicted Edmonds on one count of theft in violation of R.C. 2913.02(A)(1). In relevant part, the indictment alleged that she knowingly had obtained or exerted control over appliances without the consent of the owner, a fifth-degree felony. At a subsequent bench trial, the State presented evidence that Edmonds had removed the stove and refrigerator from her apartment after receiving an eviction notice and had not returned the appliances.

{¶ 5} Relying on *Roberts*, the trial court sustained Edmonds' Crim.R. 29 motion for acquittal. It reasoned that she had had consent to exercise control over the appliances during her tenancy and that her removal of the appliances simply exceeded the scope of the consent. Therefore, the trial court opined that she should have been charged under R.C. 2913.02(A)(2), which involves obtaining or exerting control over property "[b]eyond the scope of the express or implied consent of the owner or person authorized to give consent," rather than R.C. 2913.02(A)(1), which requires an offender to act "[w]ithout the consent of the owner."

{¶ 6} Following Edmonds' acquittal, the State moved for leave to appeal the legal reasoning behind the trial court's decision. In particular, the State sought to challenge the rationale of *Roberts*, upon which the trial court had relied. On November 29, 2022, we sustained the motion and granted the State leave to appeal.

## II. Analysis

{¶ 7} Before turning to the merits of the State's argument, we must address Edmonds' assertion that we improvidently granted the State leave to appeal. She contends we lack jurisdiction over the appeal for three reasons: (1) the State has not set forth any assignments of error; (2) any potential issue is moot given that double-jeopardy principles preclude retrying her; and (3) the State failed to comply with the requirement in App.R. 5(C) to identify an error made by the trial court.

{¶ 8} Upon review, we conclude that jurisdiction exists, and we see no basis for reconsidering our decision to grant the State leave to appeal. Under R.C. 2945.67(A), the State may appeal a decision in a criminal case, except the final verdict, after obtaining leave from this court. The statute "provides a court of appeals with jurisdiction, and the discretion, to grant the State leave to appeal from a decision of the trial court on * * * 'substantive law rulings made in a criminal case which result in a judgment of acquittal so long as the judgment itself is not appealed.' " *Dayton v. Johnson*, 2d Dist. Montgomery No. 29057, 2021-Ohio-3519, ¶ 12, quoting *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990), syllabus. As we recognized in *Johnson*, the State also must satisfy procedural requirements in App.R. 5(C), which include setting forth one or more errors that are claimed to have occurred in the trial court. Some, if not all, of the requirements of App.R. 5(C) have been characterized as "jurisdictional." *Dayton v. Stewart*, 2021-Ohio-3518, 179 N.E.3d 208, ¶ 16 (2d Dist.); *In re G.W.*, 2020-Ohio-300, 151 N.E.3d 1043, ¶ 9 (2d Dist.).

{¶ 9} With the foregoing standards in mind, we see no error in our decision to grant

the State leave to appeal. The State is appealing from the trial court's substantive-law ruling, based on *Roberts*, that the evidence was legally insufficient to convict Edmonds and that she should have been charged under R.C. 2913.02(A)(2) rather than R.C. 2913.02(A)(1). Although that issue may be moot as between the State and Edmonds in this case, the purpose of R.C. 2945.67(A) is to give appellate courts discretionary authority to hear an appeal by the State involving a discrete substantive issue or legal conclusion notwithstanding a judgment of acquittal. *Bistricky* at 159-160. Our exercise of such discretion is appropriate here.

{¶ 10} Absent an appeal by the State, there is no realistic way for the rationale of our prior decision in *Roberts* to be re-examined. The propriety of a conviction under R.C. 2913.02(A)(1) plainly would be unreviewable if the State instead had charged Edmonds under R.C. 2913.02(A)(2), as suggested by the trial court. The only other way to obtain appellate review would require a defendant to be convicted of violating R.C. 2913.02(A)(1) under facts analogous to those here. In such a case, the defendant could appeal and challenge the legal sufficiency of the evidence. In light of this court's ruling in *Roberts*, however, we find it unlikely that a defendant in Edmonds' position would be found guilty under R.C. 2913.02(A)(1). This is, of course, precisely why the State sought leave to appeal to challenge the legal reasoning in *Roberts*.

{¶ 11} Finally, we are unpersuaded by Edmonds' arguments about the lack of an assignment of error or any identified errors. Although the State has failed to recite a formal "assignment of error," the error it alleges is unmistakable and apparent in its argument. In essence, the State contends the trial court erred in finding legally insufficient evidence

to convict Edmonds under R.C. 2913.02(A)(1) because *Roberts*, the case upon which it relied, was wrongly decided. For obvious reasons, the State could not prevail on this argument below, so it sought leave to appeal to urge us to re-examine and overrule *Roberts*. Having reviewed the State's brief, we find the error it alleges to be clear. Accordingly, we turn to the merits of the issue.

{¶ 12} In *Roberts*, the defendant was charged with theft in violation of R.C. 2913.02(A)(1) after taking two window air-conditioner units from her apartment before moving out. The evidence at trial established that the defendant had pawned the air conditioners during her tenancy. The trial court found the defendant guilty. This court reversed, reasoning:

> * * * In the case before us, the State alleged that Roberts engaged in a violation of R.C. 2913.02(A)(1), on April 14, 2014, at a time when the lease was in effect and had not yet been terminated, so at the time of the alleged offense Roberts had control over the property with the owner's consent. As found by the trial court, that consent was limited in scope, and Roberts's actions went beyond that scope. Under these facts, we conclude that the State proved a violation of R.C. 2913.02(A)(2), but there is not sufficient evidence to prove a violation of R.C. 2913.02(A)(1).

> Therefore, we conclude that the trial court erred in overruling Roberts's Crim.R. 29 motion for a judgment of acquittal. Roberts's sole assignment of error is Sustained.

*Roberts,* 2d Dist. Montgomery No. 26431, 2015-Ohio-2716, at ¶ 14-15.

{¶ 13} In reaching its decision, this court distinguished *State v. Frezgi*, 2d Dist. Montgomery No. 22439, 2008-Ohio-4732. In *Frezgi*, the defendant had failed to return his employer's cell phone after being terminated from his job. In affirming the defendant's conviction for violating R.C. 2913.02(A)(1), this court reasoned that he "had consent to possess the phone when he was employed by the AIDS Resource Center, but that consent ended, entirely, with the termination of his employment, well before the time of the alleged offense." *Id.* at ¶ 8. "At the time of the theft, Frezgi was exerting control over the property without any consent at all." *Id.* We distinguished *Frezgi* in *Roberts* on the basis that the air-conditioner theft in *Roberts* had occurred during the lease term, while the tenant had control over the property with the owner's consent, whereas the phone theft in *Frezgi* had occurred after the employee's termination, when he had no consent at all to possess the phone. *Roberts* at ¶ 14.

{¶ 14} In the present case, it appears that Edmonds' alleged theft of the stove and refrigerator occurred during her lease term and prior to her eviction. The State concedes that "the facts of Edmonds's case are very similar to those in Roberts[.]" The State nevertheless argues:

Giving a tenant permission to use the appliances in the apartment during the term of the lease is one thing. But allowing a tenant to remove and sell the appliance from the apartment completely, for any purpose, is something no landlord would consent to under any circumstances. Since it is something that should never occur, the removal and sale of appliances by a tenant from a rented apartment, even if it occurs during the term of the

lease, is not a matter within the scope of a landlord's consent.

Appellant's Brief at 6.

{¶ 15} While we agree with the State's argument, it fails to demonstrate any erroneous reasoning in *Roberts*. If anything, the State's position supports the outcome in *Roberts*. Without question, no landlord would consent to a tenant's removal and sale of appliances under the circumstances before us. Therefore, the State correctly suggests that the occurrence of such an event, even during a lease term, would fall outside the scope of a landlord's consent. In other words, the State contends such an occurrence would involve obtaining or exerting control over the appliances "beyond" the scope of the owner's consent, which *Roberts* recognizes is a crime, namely a violation of R.C. 2913.02(A)(2).

{¶ 16} The State also characterizes as "untenable" this court's attempt in *Roberts* to distinguish *Frezgi*. The State notes that the defendant in *Frezgi* claimed his cell phone had been stolen during his employment, but he did not report the alleged theft until after his termination and did not return the phone after his termination. The State contends the same fact pattern exists in Edmonds' case. According to the State, Edmonds claimed that she took the appliances to be repaired during her lease term but did not report doing so until after her lease ended and did not return the appliances after her eviction. Finally, the State claims it "made no difference" in *Frezgi* whether the property "went missing" before or after the defendant's termination. By the same token, the State maintains that it should have made no difference in *Roberts* whether the air conditioners were removed and pawned during or after the lease term. Therefore, the State urges us to reconsider the

rationale of *Roberts*.

{¶ 17} We find the foregoing argument to be unpersuasive. The fact pattern in *Frezgi* is not analogous to the facts in *Roberts* or the facts in Edmonds' case. In *Frezgi*, the defendant claimed at trial that his phone had been stolen prior to his termination. If this assertion had been believed, the defendant would not have been guilty of theft at all. By convicting the defendant, the jury necessarily rejected his testimony and found that he had committed theft after his termination by failing to return his phone. In our appellate decision, we also recognized that the defendant's theft offense did not occur until after his termination.

{¶ 18} Unlike *Frezgi*, the act of theft in *Roberts* occurred during the term of the defendant's lease. Contrary to the State's argument, the timing of the thefts in *Roberts* and *Frezgi* made all the difference with respect to the divergent outcomes. The theft in *Roberts* occurred during the defendant's tenancy, meaning that she had control over the air conditioners with the owner's consent and simply exceeded the scope of that consent. The theft in *Frezgi* occurred after the defendant's termination, meaning that he exercised control over the cell phone with no consent at all. We see nothing untenable about this distinction, which was the basis for this court's opinion in *Roberts*.

{¶ 19} Finally, although the State cannot challenge Edmonds' acquittal, we note that the facts in her case appear to align with *Roberts* rather than *Frezgi*. The alleged theft seems to have occurred during Edmonds' tenancy when she had control over the stove and refrigerator with the landlord's consent and exceeded the scope of that consent by removing the appliances. The record reflects that Edmonds' landlord gave her a 10-

day notice, ordering her to vacate her apartment by March 8, 2022. Edmonds had the utilities taken out of her name effective March 3, 2022, suggesting that she left prior to the 10-day deadline. She had vacated when her landlord entered the apartment on March 24, 2022, and discovered the appliances missing. But even if Edmonds removed the appliances shortly after her tenancy ended, that fact would establish nothing more than a misapplication of *Roberts* and *Frezgi* in her case. It would provide no justification for reconsidering *Roberts*.

{¶ 20} Having found no deficiency in the legal reasoning underlying *Roberts*, we decline the State's request to overrule it.

### III. Conclusion

{¶ 21} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and EPLEY, J., concur.